IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAKE-A-WISH FOUNDATION  )
OF AMERICA  )
3550 N. Central Avenue, Suite 300  )
Phoenix, AZ 85012-2107  )
  )
   Plaintiff,  )
  )
   v.  )  Civil Action No.
  )
  )
LINDA M. SPRINGER, in her capacity as )
Director of  )
United States Office of  )
Personnel Management  )
1900 E Street NW  )
Washington, DC 20415-1000  )
  )
   Defendant.  )

## COMPLAINT

Plaintiff, Make-A-Wish Foundation of America ("Make-A-Wish"), by its attorneys Weil Gotshal & Manges LLP, states and alleges as follows:

### Nature of Action

1. This action seeks injunctive and declaratory relief to allow Make-A-Wish to participate in the 2005 Combined Federal Campaign ("CFC"), a giving program administered by the Office of Personnel Management ("OPM") that provides the only way charities can solicit federal employees and military personnel in the workplace and through which those employees can contribute money from their paychecks to worthy charitable organizations such as Make-A-Wish.

2.      Despite the fact that Make-A-Wish is a well-respected charity that has been a part of the CFC for 18 consecutive years, OPM refuses to allow Make-A-Wish to participate in the 2005 CFC. OPM's refusal violates section 706(2)(A) of the Administrative Procedure Act ("APA") in that its decision is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law.

3.      First, the denial of Make-A-Wish's application to participate in the 2005 CFC was arbitrary and capricious because the denial cannot be justified under any reasonable application of the criteria for participation. This is particularly true where the key parts of Make-A-Wish's 2005 CFC application incorporate – and are premised on – the 2003 and 2004 applications, both previously approved by OPM.

4.      Second, when Make-A-Wish appealed the decision, OPM applied a standard that does not exist in any applicable regulation.

5.      Third, in an effort to resolve the denial of its application, Make-A-Wish requested that OPM's Director, Linda M. Springer, exercise her discretion to allow Make-A-Wish to participate in the 2005 CFC. The OPM Director abused her discretion in completely misreading the plain language of the regulations governing the CFC in refusing to consider uncontroverted evidence establishing that Make-A-Wish is entitled to participate in the 2005 CFC.

6.      Fourth, both OPM's rejection of Make-A-Wish's application and its subsequent refusal to exercise its discretion to allow Make-A-Wish to participate in the 2005 CFC are impermissibly arbitrary and capricious where other similarly situated charities are permitted to participate and/or are granted waivers of the relevant requirements.

7.      Make-A-Wish meets all of the eligibility requirements for CFC participation and should be included on the national CFC list this year, as it has in each of the past 18 years.

Absent the relief sought herein, Make-A-Wish will clearly suffer irreparable harm. Indeed,

absent the relief sought herein Make-A-Wish will be cut off from a generous group of donors

that consistently provides significant support, and is impossible to access in the federal

workplace in any other way.

8.    Make-A-Wish will also suffer irreparable harm to its reputation as a trustworthy

charitable organization, because OPM's decision to omit it from the list of organizations

approved for the 2005 CFC sends the message that Make-A-Wish no longer meets the standards

or possesses the qualifications necessary to participate in the CFC. This will undermine the

ability of Make-A-Wish to attract new donors, maintain its contributor base, recruit volunteers

and wish grantors, and fulfill the mission of granting the wishes of children who are facing life-

threatening illnesses.

## Jurisdiction and Venue

9.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

10.    Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(1)

and (e) because the defendant resides here.

## The Parties

11.    Plaintiff Make-A-Wish is a well-respected national nonprofit organization

incorporated and headquartered in the State of Arizona that has been granted tax-exempt status

by the Internal Revenue Service pursuant to 26 U.S.C. § 501(c)(3). The mission of Make-A-

Wish is to grant the wishes of children with life-threatening medical conditions and to enrich the

human experience with hope, strength and joy.

12.    Defendant Linda M. Springer, whose office is located in Washington, DC, is the

Director of OPM is a federal executive branch agency located in Washington, DC that is

responsible for, *inter alia*, operating the CFC. As Director of OPM, Ms. Springer exercises

general supervision over all aspects of the CFC. She is sued in her official capacity.

## Factual Background

### The Make-A-Wish Story

13.    In April 1980, a group of individuals joined together to grant the wish of a very

sick 7-year old boy from Phoenix, Arizona, who dreamed of becoming a policeman. At the end

of his adventure, the boy exclaimed, "This has been the best day of my life!" He passed away

not long thereafter.

14.    With the fulfillment of that first wish, the Make-A-Wish Foundation was born.

Although the founders initially intended only to serve sick children in the Phoenix area, public

interest grew and the news media began to publicize the efforts of the fledgling organization. As

a result, people throughout the United States and from countries around the world began to

inquire about the possibility of forming Make-A-Wish chapters in their area.

15.    In 1984, the national Make-A-Wish organization (the plaintiff herein) was formed

to oversee the development of the chapters that had begun to arise, and to provide financial,

operational, training, marketing and developmental guidance and support to such chapters.

16.    At the present time, there are 74 licensed Make-A-Wish chapters in the United

States and its territories, each of which is a separately incorporated nonprofit organization that

qualifies for tax exempt status under Section 501(c)(3) of the Internal Revenue Code.

17.    As a result of the conscientious efforts of more than 25,000 dedicated Make-A-

Wish volunteers across the country and a relatively modest number of hard-working employees,

Make-A-Wish has become the largest and most successful wish-granting organization in the

world.

18.    Collectively, Make-A-Wish and its chapters have granted the wishes of more than 125,000 children in the United States since the organization was formed. The wish experience often has a profound effect not only on the wish child and his or her family, but also on dozens – sometimes hundreds or even thousands – of other people who either help coordinate the wish or are otherwise directly involved in its grant. This is what is meant by the phrase "Share the Power of a Wish."

19.    Over the years, Make-A-Wish has had the privilege of working closely with U.S. Presidents, scores of government agencies and literally thousands of federal employees and military personnel when granting children's wishes. By way of illustration:

a.    Make-A-Wish children have met with every U.S. President since the organization was founded, including President Bush, who has granted 26 wishes to date, and President Clinton, who granted 47 wishes.

b.    Make-A-Wish has granted numerous wishes involving every branch of the military, including wishes "to be a Navy SEAL," "to be a soldier," and "to take off and land on an aircraft carrier at sea."

c.    A significant number of federal agencies have been directly involved in granting wishes, including the Department of Justice, the Federal Bureau of Investigation, (wish "to be an FBI agent"), the EPA (wish "to speak with someone in a position to do something about the environment"), and the INS (wish "to become a U.S. citizen").

d.    One particularly amazing wish granted in 2001 involved a boy whose wish was "to be the President for a day." In that role, he met with a number of government representatives, including representatives of the Secret Service, the Department of State, the Consumer Product Safety Commission, the Department of Defense, the FBI, IRS, the Department of Treasury, the Army, the Marine Corps, and even OPM (to which he advocated his and his classmates' desire for more "snow days").

### The Combined Federal Campaign

20.    The CFC is an OPM-administered program that permits certain charitable organizations to solicit contributions from federal employees and military personnel at their

workplace. Those employees who wish to do so can contribute to such organizations by having specified sums of money deducted from their paychecks.

21.    The CFC is the only mechanism by which charitable organizations are authorized to solicit federal employees and military personnel in the workplace, absent special circumstances approved by the federal government in cases of emergencies and disasters. 5 CFR § 950.102(a).

22.    Charitable organizations deemed by OPM to be nationally eligible are automatically included in each of the over 500 domestic CFCs and the CFC Overseas Campaign. See 5 CFR § 950.201.

23.    To qualify for participation in the CFC, charitable organizations must meet various "eligibility requirements" set forth in 5 CFR § 950.202, as well as "public accountability standards," described in section 950.203, that were established "to protect federal employees against fraud and not to serve as a means of excluding groups that would otherwise be eligible." See H.R. Report 100-498, 100th Congress, 1st Sess., at 1173 (1987) (emphasis added).

24.    One such standard requires that charitable organizations seeking to be included on the national CFC list calculate the percentage of their total support and revenues that is spent on "administrative and fund-raising" (commonly referred to as "AFR"). The standard further provides that:

> If an organization's administrative and fundraising expenses exceed 25 percent of its total support and revenue, it must certify that its actual [AFR] expenses are reasonable under all the circumstances presented. It must provide an explanation with its application and also include a formal plan to reduce these expenses below 25 percent.

5 CFR § 950.203(a)(4)(i) (emphasis added).

25.    If an organization's AFR exceeds 25 percent, the Director may – but is not required to – reject its application. However, the Director may not reject such application if the

organization can demonstrate to the Director "that its actual expenses for those purposes and its plan to reduce them are reasonable under the circumstances." 5 CFR § 950.203(a)(4)(ii).

26.     Charitable organizations that are approved for participation in the CFC are listed in a booklet that is distributed to all federal employees. Employees who wish to contribute to any of the listed organizations can designate the organization(s) and amount(s) they wish to contribute. Such amounts are deducted from the employee's paycheck and eventually sent to the chosen charitable organization(s).

27.     As many as 30,000 charitable organizations currently participate in the CFC program. During the 2004 campaign, approximately 1.3 million federal employees (approximately one-third of all those given the opportunity) chose to participate by contributing some portion of their salary to an eligible organization. All told, the CFC distributed more than $256 million to those charitable organizations as a result of last year's campaign.

28.     People who are in the habit of making charitable contributions through a workplace giving program such as the CFC are less likely to make contributions outside of the CFC by writing individual checks directly to organizations. Upon finding that an organization they wish to support is not listed in the CFC booklet, many federal employees participating in the CFC will simply give the funds they would have contributed to the unlisted organization to another organization that is listed, or they will not give at all.

29.     Because the CFC is the only method by which charitable organizations can solicit directly from federal employees and military personnel, it is the only way an organization like Make-A-Wish can target a solicitation specifically to such persons by emphasizing how its activities have affected federal employees and military personnel.

*Make-A-Wish's Eighteen Years of Participation in the CFC*

30.     Make-A-Wish qualified for and was included on the national CFC list in each and every year since 1988. Throughout that time, Make-A-Wish has participated in the CFC through America's Charities, a highly regarded federated organization.

31.     During the past 18 years, literally tens (if not hundreds) of thousands of federal employees, including many who themselves have had an opportunity to "share the power of a wish," have selected Make-A-Wish to be the beneficiary of their CFC contributions. Indeed, Make-A-Wish has consistently been in the top 25 charities (out of 30,000 or so) in terms of the total amount of contributions received from federal employees and military personnel each year.

32.     Since 1987, Make-A-Wish has received total CFC contributions in excess of $25 million, with annual amounts ranging between $1.2 million and $2.0 million in each of the past 16 years. Last year, Make-A-Wish received more than $1.35 million in contributions through the CFC.

33.     Make-A-Wish's participation in the CFC over the years has provided a significant and reliable revenue stream upon which Make-A-Wish and its chapters have come to depend in fulfilling their charitable purpose.

*OPM's Approval of the Make-A-Wish Plan in 2003*

34.     In its application for the 2003 CFC, Make-A-Wish disclosed that its AFR for fiscal year 2001 (which ended August 31, 2001) exceeded 25%. In accordance with 5 CFR § 950.203(a)(4)(i), Make-A-Wish submitted an explanation stating why its expenses were reasonable under the circumstances, and provided a formal plan for reducing such expenses below 25 percent that would yield material results by fiscal year 2004.

35.    OPM determined that the plan was reasonable and accepted and approved the explanation and plan submitted by Make-A-Wish in that it allowed Make-A-Wish to participate in the 2003 CFC.

**OPM's Approval of the Same Make-A-Wish Plan in 2004**

36.    In its application for the 2004 CFC, Make-A-Wish disclosed that its AFR for fiscal year 2002 again exceeded 25%. This shortfall was in large part attributable to unexpected economic difficulties caused by the September 11 terrorist attacks. As with the previous year, Make-A-Wish submitted the required explanation and plan, restating the plan submitted with the previous year's successful application, but revising the target for material improvements to fiscal year 2005.

37.    Even with the revisions, OPM once again determined that the plan was reasonable and accepted and approved the explanation and plan submitted by Make-A-Wish in that it allowed Make-A-Wish to participate in the 2004 CFC.

**Despite Previously Concluding that its Plan Was Reasonable and Accepting and Approving Make-A-Wish's Plan to Reduce its AFR Percentage, OPM Rejects Make-A-Wish's Application to Participate in the 2005 CFC**

38.    In reliance on OPM's prior approvals of its plan, Make-A-Wish continued to implement its plan and expected that its plan would continue to be acceptable to OPM through at least 2005, especially given that the plan stated that it would be in effect through fiscal year 2005.

39.    In reliance on OPM's prior approvals of its plan, and in view of its 18 years of participation in the CFC, Make-A-Wish anticipated and budgeted for contributions from federal employees and military personnel through the 2005 CFC.

40.    Consistent with its prior practices, Make-A-Wish submitted its application for the 2005 CFC and provided all required attachments including, *inter alia*, its 2003 IRS Form 990, an

explanation of why its AFR was in excess of 25% and a status report of the plan approved by

OPM the previous two years.

41.     On or about May 17, 2005, Make-A-Wish learned from America's Charities that

OPM had denied its application to participate in the 2005 CFC. OPM's denial stated:

> [Make-A-Wish's] administrative and fundraising rate is 38.1%. Its application
> did not include an adequate Attachment F [the explanation and plan referred to
> above in ¶ 35]. CFC eligibility regulations at 5 CFR §9 50.203(a)(4)(i) require
> submission of an explanation for an administrative and fundraising rate in excess
> of 25% and a formal plan to reduce the rate below 25 percent.

42.     Other than by restating the relevant regulatory language, OPM failed to articulate

a single reason why Make-A-Wish's explanation and/or plan were deemed inadequate.

### OPM Wrongly Denies Make-A-Wish's Appeal

43.     On May 31, 2005, America's Charities, on behalf of Make-A-Wish, appealed

OPM's decision and submitted a further explanation of why Make-A-Wish's AFR percentage

had risen and what steps the organization had been taking and was continuing to take to reduce

it. To show the reasonableness of its plan and that the plan was in fact successful, Make-A-Wish

included its Form 990 for the most recently completed fiscal year. That document clearly shows

that the steps outlined in the explanation and plan previously submitted by Make-A-Wish with its

2005 CFC application (as well as the successful 2003 and 2004 applications) had, in fact,

reduced the organization's AFR to 24.1% – i.e., below the 25% limitation set forth in 5 CFR

§ 950.203(a)(4). This single document unequivocally shows the reasonableness of the Make-A-

Wish plan in that it shows that the plan actually worked in reducing the AFR to below 25%.

Thus, OPM could not properly deny Make-A-Wish's application because Make-A-Wish had

reduced its AFR below 25% and eliminated the only basis OPM offered for denying the

application.

44.    On July 15, 2005, Make-A-Wish learned from America's Charities that OPM had rejected its appeal, thereby sustaining its original denial of Make-A-Wish's application to participate in the 2005 CFC. In a letter to America's Charities, OPM defended the rejection by parroting the regulatory language and making the conclusory statement that Make-A-Wish's plan was "insufficient." Again, no attempt was made to explain how Make-A-Wish's plan was "insufficient":

> OPM may reject an application with fundraising and administrative expenses in excess of 25 percent, unless the organization demonstrates that its explanation and formal plan are reasonable under the circumstances. Upon review of the amended Attachment F, Make-A-Wish Foundation's plan for reduction of its administrative and fundraising expenses is insufficient.

45.    OPM further claimed (incorrectly) that it could not consider the Form 990 submitted by Make-A-Wish to illustrate the success of its plan to lower its AFR:

> Make-A-Wish Foundation's appeal included 2004 IRS Form 990 information to document an administrative and fundraising rate below 25 percent as part of an adequate plan by the organization. We cannot consider an IRS Form 990 or other financial data that was not available at the time of the application deadline.

There is, however, no appellate standard in the regulations that states that OPM "cannot consider an IRS Form 990 or other financial data that was not available at the time of the application deadline."

46.    In its letter denying Make-A-Wish's appeal, OPM refused to consider a document demonstrating that the plan was successful, while simultaneously insisting – for unspecified reasons – that Make-A-Wish's plan was "insufficient." Indeed, Make-A-Wish's most recent Form 990 demonstrates that the plan was not only sufficient but wholly successful in reducing the AFR to below 25%. Thus, despite the fact that Make-A-Wish demonstrated that it was entitled to participate in the 2005 CFC, OPM applied an arbitrary appellate standard and refused to look at the documentation that proved Make-A-Wish should be included in the 2005 CFC.

47.    OPM's assertion that it "cannot consider an IRS Form 990 or other financial data that was not available at the time of the application deadline" is completely contrary to the applicable regulations. Indeed, there is no such regulation. OPM cannot unilaterally create and then apply standards that are not in the regulations, and its decision to do so here is clearly an arbitrary act.

48.    By letter dated July 21, 2005, Make-A-Wish wrote to defendant Springer, as Director of OPM, explaining why Make-A-Wish was in compliance with the regulations, why its application should have been granted, and why OPM's denial of its appeal was unjustified. In its letter, Make-A-Wish asked defendant Springer to use her discretion to resolve the issue by exercising her discretion under 5 CFR § 950.203(e) to permit Make-A-Wish to participate in the 2005 CFC.

49.    On July 29, 2005, Make-A-Wish received a letter from Clarence Crawford, Chief Financial Officer of OPM, rejecting Make-A-Wish's request for a waiver of any perceived deficiency.

50.    On August 3, 2005, Make-A-Wish representatives met with OPM staff to discuss this matter. On August 11, 2005, Make-A-Wish received a letter from Mara T. Patermaster, Director of the Office of CFC Operations, stating that "OPM has determined that the decision upholding the initial denial of your organization's appeal will stand." In that letter, OPM stated that

> We maintain a uniform policy of not accepting information that supplements the original application if the information was not available at the time of the application deadline. As a result, we regret we must decline to accept your organization's 2004 IRS Form 990, which was not available as of the 2005 CFC application deadline, as evidence that MAWFA's plan to reduce its AFR is reasonable under the circumstances.

*Defendant's Disparate Treatment of Make-A-Wish as Compared*
*to Other Similarly Situated Charities*

51.    It is axiomatic that, when applying a statute or regulation, federal agencies are required to treat similarly situated parties in the same or similar manner, absent some compelling reason for disparate treatment.

52.    OPM's treatment of Make-A-Wish's application to participate in the 2005 CFC was inconsistent with that afforded other similarly situated applicants with regard to objective factors such as the AFR percentage. As such, the decision to reject Make-A-Wish's 2005 CFC application was arbitrary and capricious in violation of the APA.

53.    OPM has determined that 187 charitable organizations are eligible to participate in the 2005 CFC despite having AFRs in excess of 25%. As the chart below makes clear, in recent years OPM has permitted a steadily increasing number of charities to participate in the CFC despite having AFRs in excess of 25%:

| CFC Year | No. of Charities with AFRs > 25% | Average AFR |
|----------|----------------------------------|-------------|
| 2001 | 84 | 29.69% |
| 2002 | 94 | 30.09% |
| 2003 | 135 | 30.19% |
| 2004 | 175 | 32.66% |
| 2005 | 187 | 32.25% |

54.    Even if, assuming arguendo, Make-A-Wish had not reduced its AFR to below 25% this past fiscal year, there would have been no legitimate basis for OPM to disqualify Make-A-Wish from participating in the 2005 CFC. In fact, such a decision would have been wholly inconsistent with numerous eligibility determinations made by OPM in recent years involving charitable organizations that are similarly situated to Make-A-Wish.

55.   For example, Make-A-Wish is aware of 11 charitable organizations that OPM has determined to be eligible to participate in the 2005 CFC notwithstanding the fact that they have had AFRs in excess of 25% for each of the last three years.  These charities include:

| Charity | AFRs for 2003-2005 |
|---|---|
| Asian Relief | 2003 – 42.2% |
|  | 2004 – 40.9% |
|  | 2005 – 27.9% |
| Environmental Law Alliance | 2003 – 29.8% |
|  | 2004 – 26.7% |
|  | 2005 – 25.8% |
| Heifer International | 2003 – 30.0% |
|  | 2004 – 26.4% |
|  | 2005 – 26.4% |
| Humane Society of the U.S. | 2003 – 35.9% |
|  | 2004 – 38.5% |
|  | 2005 – 30.3% |
| Marrow Foundation | 2003 – 26.0% |
|  | 2004 – 29.9% |
|  | 2005 – 27.0% |
| MOPS International | 2003 – 25.9% |
|  | 2004 – 29.9% |
|  | 2005 – 27.0% |
| NAACP Legal Defense and Education Fund | 2003 – 28.9% |
|  | 2004 – 32.1% |
|  | 2005 – 28.9% |
| National Law Enforcement Officers | 2003 – 27.3% |
|  | 2004 – 32.2% |
|  | 2005 – 28.0% |
| Prevent Child Abuse America | 2003 – 28.2% |
|  | 2004 – 25.9% |
|  | 2005 – 26.1% |
| Vietnam Veterans of America Foundation | 2003 – 27.2% |
|  | 2004 – 25.5% |
|  | 2005 – 43.8% |
| Wilderness Society | 2002 – 30.4% |
|  | 2003 – 26.4% |
|  | 2004 – 31.8% |
|  | 2005 – 25.2% |

56.    As the above chart demonstrates, the AFR percentage increase experienced by

Vietnam Veterans of America Foundation between Years 2 and 3 – i.e., 18.3% – is higher than

that experienced by Make-A-Wish (7.2%) even if OPM was not permitted to take Make-A-

Wish's most recent financial information into consideration.

57.    In recent years, OPM has even deemed eligible for participation in the CFC a

number of charitable organizations with AFRs in excess of 40%. This year, 19 such

organizations were approved:

| Charity | 2005 AFR |
|---|---|
| Africa Action | 66.5% |
| Boys' Town of Italy, Inc. | 49.9% |
| Catholic Youth Foundation | 43.0% |
| Catholics for a Free Choice | 41.0% |
| Children's Hosp. & Research Center | 147.4% |
| Children's Relief Network | 40.8% |
| Enersol Associates | 48.6% |
| Fishburne Military School | 48.2% |
| Foundation for International Medicine | 55.4% |
| Indian Land Tenure Foundation | 78.0% |
| John Tracy Clinic | 44.2% |
| Miracle Flight for Kids | 41.0% |
| Ms. Foundation for Women | 112.4% |
| Multiple Sclerosis Association of America | 42.2% |
| NAACP Special Contribution Fund | 41.4% |
| NASA College Scholarship Fund | 51.2% |
| National Eating Disorders Association | 40.2% |
| Operation Smile | 41.6% |
| Vietnam Vets of America Foundation | 43.8% |

58.    Moreover, OPM's refusal to consider Make-A-Wish's 2004 Form 990 as

evidence of the sufficiency of its plan is inconsistent with OPM's past practice with regard to

other charities. For example, last year, National Down Syndrome Society ("NDSS") appealed

OPM's determination that it was ineligible for the same reason Make-A-Wish's application was

denied this year (i.e., an AFR in excess of 30% and an allegedly inadequate explanation and plan

for reducing it). Reversing its initial determination, OPM did precisely what it has refused to do here – i.e., it considered additional "clarifying" materials submitted by NDSS in conjunction with the appeal, including more recent draft financial statements showing that NDSS's AFR had dropped below 25 percent for the next fiscal year.

59.    If OPM had considered Make-A-Wish's most recent financial information – as the regulations permit it to do, and as it has, in fact, done with other charities – it would have had no choice but to reverse its initial determination because, having reduced its AFR to 24.10%, Make-A-Wish undeniably meets all of the public accountability and other eligibility standards set forth in 5 CFR §§ 950.202 and 950.203.

### The Substantial Irreparable Harm of Defendant's Exclusion of Make-A-Wish From Participation in the 2005 CFC

60.    Unless permitted to participate in the 2005 CFC, Make-A-Wish will be irreparably harmed because it would not be permitted to solicit donations from federal employees and military personnel in the workplace, as it has been able to do for the past 18 years. Other than through the CFC, the law does not permit access to these donors in the workplace.

61.    Over the 18 years that Make-A-Wish has participated in the CFC, it has received and relied upon total contributions in excess of $25 million, with annual amounts ranging between $1.2 million and $2.0 million in each of the past 16 years. The amount of contributions that Make-A-Wish will lose if not allowed to participate in the 2005 CFC cannot be calculated with particularity, although it is plainly a substantial sum.

62.    Even if the amount of lost contributions could be quantified with particularity, Make-A-Wish has no adequate remedy at law to the extent OPM is immune from damages arising from administrative decisions.

63.    Moreover, OPM's decision to exclude Make-A-Wish from the CFC, after 18

years of uninterrupted participation, threatens to damage irrevocably Make-A-Wish's enviable

reputation – a reputation that has allowed it to work closely with countless government agencies,

even the President of the United States of America.  Removing Make-A-Wish from the CFC will

send the mistaken message that Make-A-Wish no longer meets the standards of public

accountability and trustworthiness demanded of charities participating in the CFC.  This

impression will irreparably harm Make-A-Wish's reputation, and will surely undermine and

disrupt the ability of Make-A-Wish to solicit critical donations and wish-granting support – not

only from the federal employees and military personnel targeted by the CFC, but from other

potential supporters, including corporations, foundations, and individuals.

## COUNT I

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

64.    The averments of the foregoing paragraphs are incorporated herein by reference.

65.    Pursuant to section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 706, this Court is, in relevant part, empowered to

    (1)    compel agency action unlawfully withheld or unreasonably
            delayed; and

    (2)    hold unlawful and set aside agency action, findings, and
            conclusions found to be –

        (A)    arbitrary, capricious, an abuse of discretion, or
                otherwise not in accordance with law…

66.    The refusal of defendant to permit Make-A-Wish to participate in the 2005 CFC

violates the APA because such refusal was arbitrary, capricious, an abuse of discretion and

otherwise not in accordance with the law where Make-A-Wish's AFR is below 25% and Make-

A-Wish meets all of the other eligibility requirements and public accountability standards set forth in 5 CFR §§ 950.202 and 950.203.

67.    The refusal of defendant to permit Make-A-Wish to participate in the 2005 CFC violates the APA because such refusal was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law where the alleged insufficiency of Make-A-Wish's plan for reducing its AFR percentage is directly contradicted by OPM's approval and acceptance of the same plan during the 2003 and 2004 CFC application process, and where Make-A-Wish reasonably relied upon such approvals.

68.    The refusal of defendant to permit Make-A-Wish to participate in the 2005 CFC violates the APA because such refusal was arbitrary, capricious and an abuse of discretion where OPM has treated Make-A-Wish in a manner inconsistent with, and less favorable than, how it has treated other similarly situated charitable organizations that have been declared eligible for CFC participation this year.

69.    The refusal of defendant to permit Make-A-Wish to participate in the 2005 CFC violates the APA because such refusal was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law where defendant's failure to consider Make-A-Wish's most recent financial information was contrary to applicable law and based on a rule not found in any regulation.

70.    The refusal of defendant to permit Make-A-Wish to participate in the 2005 CFC violates the APA because such refusal was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law where defendant has failed to exercise its discretion to include Make-A-Wish in view of the extenuating circumstances discussed herein.

71.    Unless Make-A-Wish obtains the relief sought herein, it will suffer, and continue to suffer, irreparable harm for which it has no adequate remedy at law, not only because it will be cut off from a key source of support that it has relied upon for many years, but also because its sterling reputation as a trustworthy charitable organization will be irrevocably tarnished by OPM's erroneous judgment that Make-A-Wish no longer meets the standards or possesses the qualifications necessary to participate in the CFC.

72.    Under the circumstances described above, defendant's actions violate Section 706(2)(A) of the Administrative Procedure Act. Because both the public interest and the balance of harms weigh in favor of plaintiff, and plaintiff has no adequate remedy at law, plaintiff is entitled to injunctive relief.

## COUNT II

### Declaratory Judgment

73.    The averments of the foregoing paragraphs are incorporated herein by reference.

74.    Make-A-Wish applied for participation in the 2005 CFC, including with that application its 2003 IRS Form 990, an explanation why its expenses were reasonable under the circumstances, and a formal plan for reducing such expenses below 25 percent.

75.    OPM determined Make-A-Wish is ineligible to participate in the 2005 CFC.

76.    OPM has denied Make-A-Wish's appeal of that determination.

77.    Make-A-Wish has satisfied all applicable regulatory requirements in connection with its application to participate in the 2005 CFC, by submitting an adequate explanation why its expenses were reasonable under the circumstances, and an adequate plan for reducing expenses below 25 percent. Moreover, Make-A-Wish has demonstrated that its AFR percentage is below the 25 percent threshold.

78.    Pursuant to 28 U.S.C. § 2201, an actual controversy exists with respect to the question whether Make-A-Wish is eligible to participate in the 2005 CFC, and Make-A-Wish is entitled to an order declaring its right to participate in the 2005 CFC.

## RELIEF REQUESTED

For the reasons set forth above, plaintiff Make-A-Wish respectfully requests that the Court enter a judgment:

A.    enjoining OPM from printing, publishing, or distributing to federal employees any materials related to the 2005 CFC, including any list of charities eligible to participate in the 2005 CFC until such time as Make-A-Wish is included in such materials and list;

B.    declaring that Make-A-Wish is eligible to participate in the 2005 CFC;

C.    declaring that defendant erred in denying Make-A-Wish's application to participate in the 2005 CFC;

D.    declaring that defendant erred in denying Make-A-Wish's appeal of the denial of its application to participate in the 2005 CFC;

E.    declaring that defendant acted arbitrarily and capriciously in violation of the Administrative Procedure Act, 5 U.S.C. § 706 (2)(A);

F.    compelling OPM, pursuant to 5 USC § 706(1), to include Make-A-Wish in the 2005 CFC; and

G.    granting such additional relief as may be just and proper.

Dated: August 18, 2005
      Washington, D.C.

Respectfully submitted,

Michael J. Lyle (Bar No. 475078)
Christine P. Hsu (Bar No. 452209)
David N. Southard (Bar No. 470832)
Weil, Gotshal & Manges LLP
1501 K Street, N.W., Suite 100
Washington, D.C.  20005
Phone: (202) 682-7000
Fax: (202) 857-0940

Counsel for Plaintiff
Make-A-Wish Foundation of America

## CERTIFICATE OF SERVICE

I hereby certify that this 18th day of August, 2005, I caused to be served, by registered mail and hand delivery, copies of the foregoing Complaint, Motion for Temporary Injunction, Motion for Preliminary Injunction, and Memorandum of Law in Support of Motion for Entry of Injunctive and Related Relief on the following individuals:

Linda M. Springer
United States Office of Personnel Management
1900 E Street, NW
Washington, DC 20415-1000

Channing Phillips, Esq.
Principal Assistant U.S. Attorney
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

Christine P. Hsu