IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAKE-A-WISH FOUNDATION<br>OF AMERICA<br>3550 N. Central Avenue, Suite 300<br>Phoenix, AZ 85012-2107<br><br>             Plaintiff,<br><br>v.<br><br>LINDA M. SPRINGER, in her capacity as<br>Director of<br>United States Office of<br>Personnel Management<br>1900 E Street NW<br>Washington, DC 20415-1000<br><br>             Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## **DECLARATION OF DON SODO**

DON SODO, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am President and CEO of America's Charities, a nonprofit federation through which approximately 150 national and local charities, including the Make-A-Wish Foundation of America ("Make-A-Wish"), receive millions of dollars in contributions each year generated as a result of the Combined Federal Campaign ("CFC") and/or other workplace giving programs.

2. I have worked in the nonprofit field for over 30 years, including 18 years in my present position with America's Charities. During the course of my career, I have had the opportunity to chair the National Federations Committee for the CFC, which

makes recommendations to the Office of Personnel Management ("OPM") regarding the CFC program and applicable regulations, and was involved in the successful efforts to pass CFC reform legislation in 1987. I have also testified before Congress regarding the CFC and charity-related issues.

3.    As many as 30,000 charitable organizations currently participate in the CFC program. During the 2004 campaign, approximately 1.3 million federal employees (i.e., approximately one-third of all those given the opportunity) chose to participate by contributing some portion of their salary to an eligible organization. All told, the CFC distributed more than $256 million to those charitable organizations as a result of last year's campaign.

4.    People who are in the habit of making charitable contributions through a workplace giving program such as the CFC are less likely to make contributions outside of the CFC by writing individual checks directly to organizations. Upon finding that an organization they wish to support is not listed in the CFC booklet, many federal employees participating in the CFC will simply give the funds they would have contributed to the unlisted organization to another organization that is listed, or they will not give at all.

5.    Because the CFC is the only method by which charitable organizations can solicit directly from federal employees and military personnel, it is the only way an organization like Make-A-Wish can target a solicitation specifically to such persons by emphasizing how its activities have affected federal employees and military personnel.

6. Make-A-Wish has qualified and been included on the national CFC list in each and every year since 1988. Throughout that time, Make-A-Wish has participated in the CFC through America's Charities.

7. During the past 18 years, literally tens (if not hundreds) of thousands of federal employees, including many who themselves have had an opportunity to "share the power of a wish," have selected Make-A-Wish to be the beneficiary of their CFC contributions. Indeed, I believe that Make-A-Wish has consistently been in the top 25 charities (out of 30,000 or so) in terms of the total amount of contributions received from federal employees and military personnel each year.

8. OPM's treatment of Make-A-Wish's application to participate in the 2005 CFC was inconsistent with that afforded other similarly situated applicants with regard to objective factors such as the administrative/fund-raising ("AFR") percentage.

9. At my direction, and under my supervision, staff at America's Charities has reviewed the lists of all national and international charities that were deemed eligible to participate in the 2001, 2002, 2003 and 2004 CFCs, as well as the preliminary list of such charities that will be participating in the upcoming 2005 campaign. Based on that review, my staff has prepared a spreadsheet, a true and correct copy of which is attached as Exhibit A, which reflects charities that have been permitted to participate in the CFC with AFRs in excess of 25%, including those whose AFRs have exceeded 25% for three or more years.

10. OPM has determined that 187 charitable organizations are eligible to participate in the 2005 CFC despite having AFRs in excess of 25%. As the chart below

makes clear, in recent years OPM has permitted a steadily increasing number of charities to participate in the CFC despite having AFRs in excess of 25%:

| CFC Year | No. of Charities with AFRs >25% | Average AFR |
|---|---|---|
| 2001 | 84  | 29.69% |
| 2002 | 94  | 30.09% |
| 2003 | 135 | 30.19% |
| 2004 | 175 | 32.66% |
| 2005 | 187 | 32.25% |

11.   There are 11 charitable organizations that OPM has determined to be eligible to participate in the 2005 CFC notwithstanding the fact that they have had AFRs in excess of 25% for each of the last three years. These charities include:

| Charity | AFRs for 2003-2005 |
|---|---|
| Asian Relief | 2003 – 42.2% <br> 2004 – 40.9% <br> 2005 – 27.9% |
| Environmental Law Alliance | 2003 – 29.8% <br> 2004 – 26.7% <br> 2005 – 25.8% |
| Heifer International | 2003 – 30.0% <br> 2004 – 26.4% <br> 2005 – 26.4% |
| Humane Society of the U.S. | 2003 – 35.9% <br> 2004 – 38.5% <br> 2005 – 30.3% |
| Marrow Foundation | 2003 – 26.0% <br> 2004 – 29.9% <br> 2005 – 27.0% |
| MOPS International | 2003 – 25.9% <br> 2004 – 29.9% <br> 2005 – 27.0% |
| NAACP Legal Defense and Education Fund | 2003 – 28.9% <br> 2004 – 32.1% <br> 2005 – 28.9% |
| National Law Enforcement Officers | 2003 – 27.3% <br> 2004 – 32.2% |

|  |  |
|---|---|
|  | 2005 – 28.0% |
| Prevent Child Abuse America | 2003 – 28.2% |
|  | 2004 – 25.9% |
|  | 2005 – 26.1% |
| Vietnam Veterans of America | 2003 – 27.2% |
| Foundation | 2004 – 25.5% |
|  | 2005 – 43.8% |
| Wilderness Society | 2002 – 30.4% |
|  | 2003 – 26.4% |
|  | 2004 – 31.8% |
|  | 2005 – 25.2% |

12.     As the above chart demonstrates, the AFR percentage increase experienced by Vietnam Veterans of America Foundation between Years 2 and 3 – i.e., 18.3% – is higher than that experienced by Make-A-Wish (7.2%).

13.     In recent years, OPM has even deemed eligible for participation in the CFC a number of charitable organizations with AFRs in excess of 40%. This year, 19 such organizations have been approved:

| Charity | 2005 AFR |
|---|---|
| Africa Action | 66.5% |
| Boys' Town of Italy, Inc. | 49.9% |
| Catholic Youth Foundation | 43.0% |
| Catholics for a Free Choice | 41.0% |
| Children's Hosp. & Research Center | 147.4% |
| Children's Relief Network | 40.8% |
| Enersol Associates | 48.6% |
| Fishburne Military School | 48.2% |
| Foundation for International Medicine | 55.4% |
| Indian Land Tenure Foundation | 78.0% |
| John Tracy Clinic | 44.2% |
| Miracle Flight for Kids | 41.0% |
| Ms. Foundation for Women | 112.4% |
| Multiple Sclerosis Association of America | 42.2% |
| NAACP Special Contribution Fund | 41.4% |
| NASA College Scholarship Fund | 51.2% |
| National Eating Disorders Association | 40.2% |
| Operation Smile | 41.6% |
| Vietnam Veterans of America Foundation | 43.8% |

14. OPM's refusal to consider Make-A-Wish's most recent IRS Form 990 as evidence of its compliance with the 25% AFR requirement was inconsistent with OPM's past practice with regard to other charities. For example, last year National Down Syndrome Society ("NDSS") appealed OPM's determination that it was ineligible for the same reason Make-A-Wish's application was denied this year (i.e., an AFR in excess of 30% and an allegedly inadequate explanation and plan for reducing it). Reversing its initial determination, OPM did precisely what it has refused to do here – i.e., it considered additional "clarifying" materials submitted by NDSS in conjunction with the appeal, including more recent draft financial statements showing that NDSS's AFR had dropped below 25% for the next fiscal year. True and correct copies of documents relating to OPM's disparate treatment of NDSS are attached as Exhibit B.

15. In my opinion, and based on my experience, even at this date Make-A-Wish could be permitted to participate in the 2005 CFC without undue burden or expense to OPM. Specifically, as it has done in the past, OPM could simply send an electronic communication to the 316 or so PCFOs across the country, directing that they either: (a) add Make-A-Wish to the national charity list included in their local campaign brochure if such brochures have not yet been printed, or (b) include Make-A-Wish on an errata sheet to be distributed with the brochures if final printing has already occurred.

Executed on August 15, 2005
Washington, D.C.

_____
Don Sodo