

UNITED STATES
OFFICE OF PERSONNEL MANAGEMENT
WASHINGTON, DC 20415-1000

OFFICE OF THE DIRECTOR

JUN 17 2004

Mr. Don Sodo
President/CEO
America's Charities
14150 Newbrook Drive, Suite 110
Chantilly, Virginia 20151

Dear Mr. Sodo:

We have completed a review of your federation's application to participate in the 2004 Combined Federal Campaign (CFC). This letter provides information about acceptances and denials of America's Charities members. I am admitting America's Charities and 49 of the 52 member organizations included on your application for participation in the 2004 CFC.

Please note that we have found 12 member organizations eligible although their administrative and fundraising rates exceed 25%. They are:

| | |
|---|---|
| 100 Black Men of America | (26.7%) |
| American Foundation for the Blind | (26.4%) |
| Amnesty International of the USA | (37.9%) |
| Black Women's Health Imperative | (44.9%) |
| Dress for Success Worldwide | (25.3%) |
| The Humane Society of the United States | (38.5%) |
| The Jane Goodall Institute for Wildlife Research, Education and Conservation | (40.2%) |
| Make-A-Wish Foundation of America | (30.9%) |
| Multiple Sclerosis Association of America | (44.7%) |
| NAACP Legal Defense and Educational Fund | (32.1%) |
| National Law Enforcement Officers Memorial Fund | (32.2%) |
| Vietnam Veterans of America Foundation | (25.5%) |

Three of the 52 member organizations appearing on your list of applicants have been denied participation in the 2004 CFC. They are:

National Down Syndrome Society 
Native American Fish and Wildlife Society
Native American Rights Fund

An explanation of the reason for these denials appears in Attachment One of this letter. A third organization, the Native American Fish and Wildlife Society, requested a waiver of the 80% government support limit. This waiver is denied. Therefore they may not participate in the 2004 CFC. If, after reviewing the eligibility requirements for CFC (appearing at 5 CFR Part 950), you believe an error was made in reviewing this member's application, you may appeal this denial to Dan G. Blair, Deputy Director of the Office of Personnel Management.

CON 131-64-4
September 2001

Your appeal need only respond to the deficiencies described in Attachment One of this letter. Your appeal must be in writing and must be received within 10 business days from the date you receive this letter. Appeals should be sent to:

U.S. Office of Personnel Management<br>
CFC Operations – Room 5450<br>
1900 E Street, NW<br>
Washington, DC 20415

Please note that OPM can experience delays with materials sent through the United States Postal Service (USPS) due to security issues. Delivery of materials through commercial package and mail delivery services or private messenger services due to security issues are not directly affected. As a result, all applicants are encouraged to use one of the above delivery methods if an appeal is submitted.

We also remind the federation that, per CFC Memorandum 2003-9, the use of broad descriptions of services, benefits, assistance or program activities and/or descriptions that replicate the identical information for each state in which service is claimed does not adequately allow OPM to determine that the real services, benefits, assistance or program activities were provided or to accurately determine the number of individuals or entities to whom these were delivered. Future submissions that do not provide adequate detail to demonstrate that the organization provided a real service, benefit, etc. in 15 different states may be denied.

Finally, OPM noted that the audit report for your federation did not include a verification that your federation was honoring designations made to its member agencies. 5 CFR 950.301(e)(2) states that federations are to be "...annually audited by an independent certified public accountant in accordance with generally accepted auditing standards.... The audit must verify that the federation is honoring designations made to each member organization." Lack of this verification in audit reports provided for future campaigns may result in a denial of the federation.

Thank you for your interest in the Combined Federal Campaign.

Sincerely,

Mara T. Patermaster, Director
Office of CFC Operations


Enclosure: Attachment One

Attachment One
America's Charities

<u>National Down Syndrome Society</u> – The organization's administrative and fundraising rate is 30.2 percent. Its application did not include an adequate Attachment F. CFC eligibility regulations at 5 CFR §950.203(a)(4)(i) require submission of an explanation for an administrative and fundraising rate in excess of 25 percent and a formal plan to reduce the rate below 25 percent.

<u>Native American Rights Fund</u> – The organization's administrative and fundraising rate is 37.2 percent. Its application did not include an adequate Attachment F. CFC eligibility regulations at 5 CFR §950.203(a)(4)(i) require submission of an explanation for an administrative and fundraising rate in excess of 25 percent and a formal plan to reduce the rate below 25 percent.



July 1, 2004

Mr. Dan G. Blair
Deputy Director of the Office of Personnel Management
CFC Operations Room 5450
1900 E St., NW
Washington, D.C. 20415

Dear Mr. Blair:

The three America's Charities members that recently received letters indicating that they may be ineligible to participate in the 2004 Combined Federal Campaign (CFC) are among the best known charities in the country. More importantly, these groups are highly respected by the public at large and by many thousands of Federal employees for their very real and important work in helping to provide civil rights, supporting individuals with Down Syndrome and protecting the environment.

In making a determination and judgment regarding each applicant charity, we urge that you consider the circumstances of each group and weigh the benefits of their participation against excluding them from the campaign.

Also, I'd like to comment on the very detrimental effect of the 9/11 terrorist attacks on charities in America. The attacks had an unprecedented and negative effect on many charities' ability to raise funds, or even stay in business, resulting in increases in their fundraising and administrative percentages for '02...which are reflected in their application for the '04 CFC. Charities in general should not be penalized.

**National Down Syndrome Society**

The letter received by National Down Syndrome Society indicates a proposed exclusion from the CFC because their application did not include an adequate Attachment F. CFC eligibility regulations at 5 CFR 950.203(a)(4)(i) require submission of an explanation for an administrative and fundraising rate in excess of 25% and a formal plan to reduce the rate below 25 percent, and that plan is to be appended as Attachment F.

National Down Syndrome Society did attach a plan as Attachment F which provided an explanation as contemplated by the regulations, and we believe its application was fully compliant. We also attach (Attachment 1) some additional materials for clarity.

As the plan and additional materials make clear, National Down Syndrome Society has traditionally had a below 25% FRA. In 2003, it retained some additional personnel to increase the scope of its fundraising, which had a one-time effect on the percentage. As a result of the normal time lag associated with fundraising, it has taken more than few months for fundraising revenue to increase, thereby reducing the percentage back below 25%, but as the materials indicate there is every expectation that the percentage is declining and will be below 25%.

### Native American Rights Fund

The letter received by Native American Rights Fund also proposes denial of admission to the CFC because of a failure to provide an Attachment F. Native American Rights Fund did attach a plan as Attachment F that provided an explanation as contemplated by the regulations, and we believe its application was fully compliant. We also attach (Attachment 2) some additional materials for clarity.

As the plan and materials indicate, Native American Rights Fund experienced an unexpected drop in revenue during 2002, which caused its percentage to rise. In the prior year its percentage had been below 25% with basically the same administrative expenses, but since the size of the revenue drop could not be predicted Native American Rights Fund did not have sufficient advance warning that it needed to reduce its fundraising expenses. Native American Rights Fund is still analyzing the reasons for the size of the drop in revenue and exploring whether it can be reversed in the near term. In the meantime, as the plan and materials indicate, Native American Rights Fund is taking steps to reduce its fundraising and administrative expenses within the next year.

Not only do we believe that the specific, detailed information provided by National Down Syndrome Society and Native American Rights Fund (with the clarifying materials submitted as attachments to this letter) meet the CFC requirements for submitting a plan to reduce their FRA, we believe that these two groups merit acceptance into the CFC based on the overall goal of the regulations. These charities substantially meet the public accountability criteria. Their exclusion from the CFC would cause unnecessary harm to families and the environment that could longer no benefit from their services. The harm that would be caused from exclusion would be completely disproportionate, and OPM should use its discretion to admit these charities even if it determines that the plans submitted (with the clarifying materials) somehow still constitute "non-compliance" with the FRA explanation requirement.

OPM historically and traditionally has exercised significant discretion in the past by accepting scores of charities with FRA's over 25% who submitted explanations. We strongly urge OPM to do so now and admit National Down Syndrome Society and Native American Rights Fund to the CFC.

## Native American Fish and Wildlife Society

The letter received by Native American Fish and Wildlife Society (NAFWS) proposes denial of admission to the CFC because it did not receive a waiver of the 80% government support provision.

We believe that NAFWS merits acceptance into the CFC for the following reasons:

- Native American Fish and Wildlife Society received a waiver in the prior year, and should receive a waiver for the current year. For the Fiscal Year ending 12/31/02, Native American Fish and Wildlife Society's total government contributions equaled 86.7% of total revenue. The year prior, government contributions amounted to 85.4% of total revenue. NAFWS was granted admission into the CFC last year by requesting and receiving a waiver of the government support limit. There is no restriction in the waiver provisions to one year. In situations when charities have FRA's over 25%, multi-year waivers have been granted. No explanation has been provided for a denial of the waiver, and we submit that in the absence of a compelling reason a waiver should be granted to allow admission this year.

- Even though the percentage of government support increased slightly, by 1.3%, in fact the amount of government contributions decreased between FY 2001 and 2002. In 2001, NAFWS received $857,681 in government contributions. In 2002, NAFWS received $811,969 in government contributions. (See Attachment 3 for IRS Form 990's). The government support percentage increased due to the decrease in total revenue. As you know, many charities have experienced decreases in revenue during this period due to national economic factors having little relation to the quality of their programs.

- We do not believe the size of the percentage requires exclusion from the CFC. Last year, OPM approved Global Jewish Assistance Relief Network to participate in the CFC campaign with government support of 93%. (See Attachment 4 IRS Form 990).

- We understand that much of the government support is under the Indian Self-Determination and Education Assistance Act of 1993 (ISDEA, P.L. 93-638, as amended, 25 U.S.C. 450 et seq.), an act of Congress under which tribal trust resources are conserved through specific discretionary grants—referred to as 638 grant contracts—made by the federal government following application by the tribe. These monies are accounted for under Section 1c of IRS Form 990. However, these grants are discretionary grants to enable Native American tribes to pay for social programs effectively under government contracts. The government support of Global Jewish Assistance Relief Network, which is under the USDA's Food for Progress Program and Section 416 (B) of the Food for Progress Act of 1985, seems comparable. These are discretionary grants made by the government to accomplish particular government objectives, in this case to

"provide commodities to developing countries and emerging democracies committed to introducing and expanding free enterprise in the agricultural sector."

We urge OPM to focus attention on the primary intent of the public support criteria as developed by Congress, i.e. "... to protect the public against fraud." Native American Fish and Wildlife Society has a history of providing specific programs deemed worthy of support under an act of Congress. It certainly was not intended that a charity receiving support through an act of Congress for specific programs should be denied the ability to seek additional contributions directly from federal employees in the CFC.

The CFC is a critical program for publicly supported organizations such as these charities, and the charities believe that they deserve the opportunity to participate. Accordingly, America's Charities respectfully requests that OPM consider these factors and admit these charities into the 2004 CFC.

On a final note you indicated in your determination letter that our audit did not include verification that our federation was honoring designations made to its member agencies. This issue was addressed in May of this year. We had contacted our previous auditors who had completed the 2002 audit and ask them to write a letter to that effect as requested by OPM.

We prepared to contract with them to do an agreed upon procedures engagement to verify that we were honoring the requests. We sent the engagement letter to OPM to sign that they agreed to the procedures. Just as we were getting ready for the auditors to come in to do the work, we were contacted by Mark Lambert at OPM indicating that they had decided not to have us do the procedures and that they would just give us a warning. We indicated and sent him our audit for 2003 which now has the required language.

Thank you for your consideration of our appeal.

Sincerely,

Don Sodo
President & CEO


cc: Mara Patamaster, Director Office of CFC Operations
    Steve Kaufman, Hogan & Hartson
    Don Sodo, President CEO, America's Charities
    Helen DeHarde, Director, Campaign Services
    Wendy Sall, Senior Campaign Services Coordinator

National Down Syndrome Society
FRA Explanation

For the Fiscal Year ending 3/31/03, the Fundraising and Administrative Expenses for National Down Syndrome Society (NDSS) were 30.2%. This percentage was greater than 25% for the below reasons:

- The investment of time and cost put into special events and buddy walks

- The need for additional staff due to increase in special events and programs

As stated in their Fundraising and Administrative Expenses explanation, NDSS is currently at a point where there is sufficient staff to administer programs and special events. During fiscal year 2003/04 and 2004/05, NDSS will be raising an additional $1 million of revenue from its 25th Anniversary Campaign. The total goal is to raise $5 million over the next three years. This is in addition to normal operating revenue and will be used for additional programs in the areas or education, research and advocacy. A listing/description of those programs and services are attached for your reference. Therefore, as revenue continues to grow, fundraising and administrative expenses have leveled and will continue to level off.

This is evidenced by National Down Syndrome Society's 2004 draft financials. According to the Statement of Activities for March 31, 2004 (Exhibit B is attached for your reference), Total Revenues equaled $3,430,871, an increase of $1,595,907 from 2003. Management and General Expenses for 2004 totaled $168,959 down from the prior year's figure of $241,390. Fundraising Expenses increased to $365,049 but this was offset by the decrease in Management and General Expenses and increase in revenues.

According to the figures on the draft audit, the Fundraising and Administrative expenses for the Fiscal Year ending 3/31/04 are 15.6%.

This Fundraising and Administrative percentage is consistent with NDSS's Fundraising and Administrative Percentage history:

Fiscal Year ending 3/31/02- 24.9%
Fiscal Year ending 3/31/01- 20.6%
Fiscal Year ending 3/31/00- 18.4%
Fiscal Year ending 3/31/99- 24.7

This future reduction in fundraising and administrative costs as well as its history of costs under 25% reflects the true financial picture of National Down Syndrome Society. The circumstances that led to this increased percentage have been addressed and plans for reduction have been successfully implemented leading to an increase in revenue while keeping fundraising and administrative costs at bay.



UNITED STATES
OFFICE OF PERSONNEL MANAGEMENT
WASHINGTON, DC 20415-1000

OFFICE OF THE DIRECTOR

JUL 22 2004

Mr. Don Sodo
President/CEO
America's Charities
141502 Newbrook Drive, Suite 110
Chantilly, VA 20151

Dear Mr. Sodo:

Pursuant to the authority delegated to me as Deputy Director of the U.S. Office of Personnel Management (OPM), I have completed a review of your appeal on behalf of three federation members to participate in the 2004 Combined Federal Campaign (CFC). I am pleased to inform you that I am admitting the Native American Rights Fund and National Down Syndrome Society. However, I am sustaining the denial of the application of and Native American Fish and Wildlife Society.

The Native American Fish and Wildlife Society requested a waiver of the 80 percent government support limit. The waiver request is denied. CFC regulations at 5 CFR §950.203(a)(10) require that each organization certify that it has received no more than 80 percent of its total support and revenues from government sources.

This decision is final for administrative purposes for the 2004 CFC. It does not, however, preclude the organizations from applying to participate in future campaigns, at either the national or local levels.

There is one last step to complete your federation's 2004 CFC application. This year you must register electronically the 25 word statement that will appear with your member organizations' names and CFC numbers in the official CFC listing. Please go to our website to enter the 25-word statement. You will need to know your federation's Employer Identification Number (EIN) and CFC PIN **(Gh@Go183)**. Following are the steps for entering your statement:

1. Go to **http://apps.opm.gov/CFC/Charity/Main.jsp**
2. Click on "National/International Federation Login"
3. Enter your federation's EIN and CFC PIN.
4. Create a new PIN (it must contain 6-8 alpha or numeric characters)
5. Re-enter the system using your EIN and new PIN.
6. Review the organization information (telephone number, administrative and fundraising rate, etc.) recorded by OPM and enter a statement that does not exceed 25 words.
7. Click "Submit" when done.

CON 131-64-4
September 2001

Mr. Don Sodo
Page 2

This information must be submitted by close of business (5:00 pm EST) Tuesday, July 27, 2004. Please contact Ms. Valinda Pittman at the Office of CFC Operations (202) 606-2564 if you need technical assistance or have any questions about this process.

Best wishes for a successful 2004 campaign.

Sincerely,

Dan G. Blair
Deputy Director